IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DIDEM GÜNEY ALSOY and<br>MEHMET ALI ALSOY and<br>BONAPORT LLC, a Delaware limited liability<br>company,<br><br>       Plaintiffs,<br><br>v.<br><br>ÇİÇEKSEPETİ İNTERNET<br>HİZMETLERİ ANONİM SİRKETİ, a<br>Turkish company,<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civ. No. 15-174-SLR<br>)<br>)<br>)<br>)<br>)<br>) |

---

Larry R. Wood, Jr., Esquire and Adam V. Orlacchio, Esquire of Blank Rome LLP, Wilmington, Delaware.  Counsel for Plaintiffs.  Of Counsel: Steven M. Johnston, Esquire and Timothy D. Pecsenye of Blank Rome LLP.

David E. Moore, Esquire and Stephanie E. O'Byrne, Esquire of Potter Anderson & Corroon, LLP, Wilmington, Delaware.  Counsel for Defendant.  Of Counsel: Aaron J. Weinzierl, Esquire of Foley & Lardner LLP.

---

**MEMORANDUM OPINION**

Dated: January  12  , 2017
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

On February 20, 2015, Didem Güney Alsoy, Mehmet Ali Alsoy, and Bonaport, LLC ("plaintiffs") filed a complaint against Çiçeksepeti İnternet Hizmetleri Anonim Şirketi ("defendant"), alleging violations of: (1) the reverse domain name hijacking provision of the Lanham Act, 15 U.S.C. § 1114(2)(D)(v); (2) Delaware's Deceptive Trade Practices Act, 6 Del. C. § 2532 ("DTPA"); and (3) Delaware common law unfair competition. (D.I. 1) Presently before the court are defendant's motions to dismiss or to stay. (D.I. 10) This court has jurisdiction under 28 U.S.C. §§ 1331 and 1338.

## II. BACKGROUND

Didem Güney Alsoy and her husband Mehmet Ali Alsoy are Turkish nationals who have been involved in various food-distributing businesses in Turkey, including a company named BonnyFood A.Ş., which once owned the Turkish trademark "BonnyFood" and the Turkish domain name <bonnyfood.com.tr>. (D.I. 1 at ¶¶ 10-15) Ms. Alsoy registered the U.S. domain name <bonnyfood.com> in 2008 and, at some point in 2009, BonnyFood A.Ş. began using it.[1] (D.I. 1 at ¶¶ 11, 21) Since 2013, the Alsoys, BonnyFood A.Ş., and various partners and corporate officers have been embroiled in litigation in Turkish courts over allegations of fraud and misconduct. (D.I. 1 at ¶¶ 16-22) During this litigation, BonnyFood A.Ş. "was having trouble meeting its financial obligations,"[2] and the company sold the Turkish "BonnyFood" trademark in a

---

[1] Presumably with Ms. Alsoy's consent.

[2] A Turkish bankruptcy proceeding may be one of the cases cited in the complaint.

judicial auction.[3]  (D.I. 1 at ¶ 18)  Defendant is the current owner of the Turkish "BonnyFood" trademark and the <bonnyfood.com.tr> domain name.  (D.I. 1 at ¶ 22)

In August 2014, the Alsoys established Bonaport LLC ("Bonaport") under Delaware law.  (D.I. 1 at ¶ 23)  Bonaport "is a marketing outsourcing company in the food industry primarily [that] has clients in Turkey, U.K. and New Jersey."  (D.I. ¶ 24)  Bonaport and Mr. Alsoy are the current registrants of the <bonnyfood.com> domain name, and Bonaport maintains a website at that address.  (D.I. ¶ 24)  In September 2014, Bonaport applied for the U.S. trademark BONNYFOOD.[4]  (D.I. 1 at ¶ 25)  The USPTO published the mark for opposition on May 26, 2015, and the application is currently pending.[5]  (D.I. 1 at ¶ 25)

In October 2014, defendant petitioned the World Intellectual Property Organization ("WIPO") under a Uniform Domain Name Dispute Resolution Policy ("UDRP") proceeding to gain the registration of the <bonnyfood.com> domain name. (D.I. 1 at ¶ 29)  On January 29, 2015, a WIPO panel ordered Mr. Alsoy and Bonaport LLC to transfer the U.S. domain name to defendant.  *See* WIPO Case No. D2014-1775. Pursuant to UDRP policies[6] and the Lanham Act, plaintiffs commenced this action on February 20, 2015.

---

[3] Defendant explains in its motion that it purchased the Turkish trademark at that auction, and Ms. Alsoy sued to rescind the sale.  (D.I. 11 at 3)

[4] *See* USPTO trademark application serial number 86395526.

[5] Bonaport LLC's U.S. application for the BONNYFOOD mark is subject to an opposition proceeding before the Trademark Trial and Appeal Board ("TTAB").  Defendant in this case is the opposer in that proceeding.  The TTAB has stayed the opposition pending the outcome in this case.  *See* USPTO TSDR Case Viewer, Case No. 86395576, http://tsdr.uspto.gov/caseviewer/pdf?caseId=86395576#docIndex=0.

[6] "[T]he UDRP itself explicitly provides for registrants to 'commence a lawsuit against the complainant in a jurisdiction to which the complainant has submitted' as required by UDRP Rule ¶ 4(k)."  (D.I. 30 at 2)  This amounts to a stay of the WIPO action pending resolution, dismissal, or court order.  *See* ICANN, *Uniform Domain-Name Dispute-*

2

Defendant now moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Delaware state law claims.  (D.I. 11 at 8)  Defendant also moves to dismiss the Lanham Act[7] claims on prudential grounds and international comity.  (D.I. 11 at 15)  Alternatively, defendant requests a stay pending the outcome of the litigation in Turkey.  (D.I. 1 at 15)

## III.  MOTION TO DISMISS

### A.  Failure To State A Claim

#### 1.  Standard of review

A motion filed under Rule 12(b)(6) tests the sufficiency of a complaint's factual allegations.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 545 (internal quotation marks omitted) (interpreting Fed. R. Civ. P. 8(a)). Consistent with the Supreme Court's rulings in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit requires a three-part analysis when reviewing a Rule 12(b)(6) motion.  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d. Cir. 2016).  In the first step, the court "must tak[e] note of the elements a plaintiff must plead to state a claim."  Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth."  Lastly, "[w]hen there are well-

---

*Resolution Policy* (August 26, 1999), https://www.icann.org/resources/pages/policy-2012-02-25-en.

[7] Counts I and II.  For reasons discussed below, the court addresses both counts under 15 U.S.C. § 1114(2)(D)(v).

3

pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (citations omitted).

Under *Twombly* and *Iqbal*, the complaint must sufficiently show that the pleader has a plausible claim. *McDermott v. Clondalkin Grp.,* Civ. No. 15-2782, 2016 WL 2893844, at \*3 (3d Cir. May 18, 2016). Although "an exposition of [the] legal argument" is unnecessary, *Skinner v. Switzer*, 562 U.S. 521 (2011), a complaint should provide reasonable notice under the circumstances. *Id.* at 530. A filed pleading must be "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," such that "the factual contents have evidentiary support, or if so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." *Anderson v. Bd. of Sch. Directors of Millcreek Twp. Sch. Dist.*, 574 F. App'x 169, 174 (3d Cir. 2014) (quoting Fed. R. Civ. P. 11(b)). So long as plaintiffs do not use "boilerplate and conclusory allegations" and "accompany their legal theory with factual allegations that make their theoretically viable claim plausible," the Third Circuit has held "pleading upon information and belief [to be] permissible [w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control." *McDermott*, 2016 WL 2893844, at \*4 (quotation marks, citation, and emphasis omitted).

As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true, and view them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). The court's analysis is a

4

context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

### 2. Discussion

#### a. Deceptive trade practices

Plaintiffs allege that, under 6 Del. C. § 2532(a)(2), "[b]y its conduct, defendant caused likelihood of confusion or misunderstanding as to source, sponsorship, approval or certification of services by plaintiffs." (D.I. 1 at ¶ 41) Plaintiffs contend that defendant is liable under Delaware law, because it "brought a domain dispute resolution proceeding." (D.I. 1 at ¶ 30) DTPA claims require a "horizontal" relationship between businesses, "which exists between at least two businesses on the same market level, because they manufacture similar products in the same geographic region, or are direct competitors." *Chase Bank USA, N.A. v. Hess, No.* 2013 WL 867542, at *5 (D. Del. Mar. 7, 2013) (citing *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 70 (Del. 1993)). Plaintiff "Bonaport LLC is a marketing outsourcing company in the food industry . . . . [with] clients in Turkey, U.K. and New Jersey and a website at <bonnyfood.com>." (D.I. 1 at ¶ 24) "Defendant does not use the trademark BONNYFOOD in the U.S.A. and has taken no action to internationalize the mark BonnyFood." (D.I. 1 at ¶ 26) On these facts, plaintiffs and defendant may be direct competitors[8] in Turkey, but there are no facts to suggest that plaintiffs and defendant have a horizontal relationship anywhere in the United States, let alone Delaware.[9] Defendant's filing of a domain name dispute

---

[8] It is not clear whether plaintiffs compete directly with defendant in Turkey, or if the <bonnyfood.com> domain refers visitors to a website operated by one of defendant's competitors in Turkey.

[9] Plaintiffs argued that DTPA must be "liberally construed" but did not address the horizontal relationship required under the case law. (D.I. 30 at 6-7) Moreover, plaintiffs cited to no case law with similar facts supporting an application of DTPA to Lanham Act reverse domain name hijacking claims.

with WIPO is not a deceptive trade practice covered by the DTPA. The court grants defendant's motion to dismiss count III.

### b. Unfair competition

Plaintiffs allege that defendant's filing of a domain name dispute with WIPO results in a claim of unfair competition in the common law of Delaware, because defendant's conduct "constitutes misappropriation . . . and is . . . likely to confuse and deceive members of the purchasing public." (D.I. 1 at ¶ 45) Defendant argues that its actions are not misappropriation under the common law. (D.I. 11 at 10) Defendant also argues that plaintiffs cannot recover under the common law, because they consented to the WIPO domain name proceeding. (*Id.*) With respect to likelihood of confusion, defendant avers that this is a Delaware common law trademark claim and that plaintiffs have failed to demonstrate that defendant used the mark in either Delaware or the United States. (D.I. 11 at 12) Plaintiffs argue that the "Lanham Act confers a straightforward mechanism . . . for seeking judicial review of UDRP panel decisions" and that the court may review "*de novo* . . . a dispute that has been the subject of the [UDRP] procedure." (D.I. 30 at 7) While this is a true statement about the Lanham Act, plaintiffs do not address any of defendant's arguments with respect to common law unfair competition in Delaware;[10] therefore, the court grants defendant's motion to dismiss count IV.

### B. Prudential Grounds

In count I, plaintiffs ask the "court to declare that plaintiff[s] did not register the <bonnyfood.com> domain in bad faith and that plaintiffs may use the domain <bonnyfood.com> without restriction and to quash the WIPO order transferring the

---

[10] Moreover, plaintiffs do not cite any Delaware case law that suggests that a UDRP proceeding may lead to a claim of common law unfair competition.

6

domain <bonnyfood.com> to defendant." (D.I. 1 at ¶ 34) In count II, plaintiffs cite 15

U.S.C. § 1114(2)(D)(v), which is the reverse domain name hijacking provision of the

Anticybersquatting Consumer Protection Act ("ACPA"). *Barcelona.com, Inc. v.*

*Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 625 (4th Cir. 2003). Under

the statute, plaintiffs "request[] that the court declare that defendant has acted in bad

faith and has engaged in reverse domain name hijacking." (D.I. 1 at ¶ 39) The relevant

statute provides:

> A domain name registrant whose domain name has been
> suspended, disabled, or transferred under a policy described
> under clause (ii)(II) may, upon notice to the mark owner, file
> a civil action to establish that the registration or use of the
> domain name by such registrant is not unlawful under this
> Act. The court may grant injunctive relief to the domain
> name registrant, including the reactivation of the domain
> name or transfer of the domain name to the domain name
> registrant.

15 U.S.C. § 1114(2)(D)(v). From this text, count I appears to fall within the declaratory

and injunctive relief available within ACPA, and for the purposes of this motion, the

court assumes that counts I and II are both ACPA claims.[11]

Defendant moves to dismiss, or stay, counts I and II on prudential grounds of

international comity. (D.I. 11 at 15-16) Plaintiffs argue that the "complaint states a valid

claim for relief under the ACPA" and that there is no case law to support defendant's

motion to dismiss arising out of a UDRP proceeding on "'prudential grounds or on the

basis of 'international comity.'" (D.I. 30 at 5) The court agrees. Congress amended the

Lanham Act with ACPA "principally for the purpose of protecting trademark owners

against cyberpiracy." *Barcelona.com*, 330 F.3d at 624 (citations omitted). Moreover,

U.S. district courts may hear trademark disputes between foreign litigants arising out of

WIPO UDRP domain name proceedings over domain names administered by U.S.

---

[11] While defendant challenged the sufficiency of counts III and IV, defendant did not
challenge, and the court does not address, the sufficiency of counts I and II.

domain name registrars. *Id.* at 625. Plaintiffs have pled a Lanham Act claim. The court discerns no reason to dismiss the claims on "prudential grounds" or "international comity." Therefore, the court denies, without prejudice, defendant's motion to dismiss counts I and II.

## IV. MOTION TO STAY

Defendant moves to stay proceedings with respect to counts I and II. (D.I. 11 at 15, 18) Defendant argues that "[r]esolution by the Turkish courts necessarily will simplify the key domain name ownership issue." (D.I. 11 at 19) Plaintiffs present no arguments opposing this motion.

### A. Standard of Review

As recognized by the Supreme Court of the United States, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 252 (1936). Put another way, the decision of whether to grant a stay rests within the sound discretion of the court through the exercise of judgment, "weigh[ing] competing interests and maintain[ing] an even balance." *Id. See also Cost Bros. Inc. v. Travelers Indemnity Co.*, 760 F.2d 58, 60 (3d Cir. 1985); *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988). Since the enunciation of the standard by the Supreme Court in 1936, courts have identified several factors which may be used as guidance in determining whether a stay is appropriate: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party, i.e., the balance of harms; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay will promote

8

judicial economy, e.g., how close to trial has the litigation advanced. *See, e.g.*, *Cheyney State Coll. Faculty v. Hufstedler*, 703 F.2d 732, 737–38 (3d Cir. 1983).

## B. Discussion

Addressing the first factor, a stay would not unduly prejudice plaintiffs (non-moving party), because plaintiffs currently control and use the disputed domain name. The second factor (whether a stay will simplify the issues in question and trial of the case) depends on whether the Turkish litigation is likely to dispose of aspects of the ACPA claims in counts I and II. The elements of a reverse domain name hijacking claim are as follows:

> a plaintiff must establish (1) that it is a domain name registrant; (2) that its domain name was suspended, disabled, or transferred under a policy implemented by a registrar as described in 15 U.S.C. § 1114(2)(D)(ii)(II); (3) that the owner of the mark that prompted the domain name to be suspended, disabled, or transferred has notice of the action by service or otherwise; and (4) that the plaintiff's registration or use of the domain name is not unlawful under the Lanham Act, as amended.

*Barcelona.com*, 330 F.3d at 626. The first three elements are satisfied by the facts as pled, the adverse UDRP proceeding, and defendant's presence in the case at bar. Therefore, the only dispute relevant to the disposition of counts I and II is whether plaintiffs' registration or use of the <bonnyfood.com> domain name is unlawful under the Lanham Act.

Defendant argues that the Turkish courts will resolve "the key domain name ownership issue." (D.I. 11 at 19) However, defendant has not adequately explained how the litigation in Turkey will resolve the question of whether plaintiffs' use of the <bonnyfood.com> domain name is unlawful under the Lanham Act. Moreover, the facts as pled do not suggest that such a question is currently before a court in Turkey. Therefore, a stay does not appear to resolve the second factor of simplifying the issues

9

in question. On the third factor (judicial economy), a stay would consume court resources while prolonging the inevitable trial. Administrative proceedings at the USPTO are currently stayed pending the outcome of the case at bar; therefore, this additional delay weighs against a stay. Of the three factors, only one weighs in favor of a stay. For these reasons, the court denies the motion.

## V. CONCLUSION

For the foregoing reasons, the court denies without prejudice defendant's motion to dismiss counts I and II (D.I. 10), denies defendant's motion to stay counts I and II (D.I. 10), and grants defendant's motion to dismiss counts III and IV (D.I. 10). An appropriate order shall issue.